UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| PATSY KATHRINE HARVEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:15-CV-440-CCS |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 12]. Now before the Court is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 13 & 14] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16]. Patsy Kathrine Harvey ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** the Plaintiff's motion, and **GRANT** the Commissioner's motion.

### I.  PROCEDURAL HISTORY

On August 22, 2012, the Plaintiff filed an application for disability insurance benefits ("DIB"), claiming a period of disability which began March 31, 2012. [Tr. 116-23]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 76-77]. On April 30, 2014, a hearing was held before the ALJ to review determination of the

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

Plaintiff's claim. [Tr. 22-41]. On July 14, 2014, the ALJ found that the Plaintiff was not disabled. [Tr. 6-21]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-5]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on October 1, 2015, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.   ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since March 31, 2012, the alleged onset date. (20 CFR 404.1571 *et seq.*)
>
> 3. The claimant has the following severe impairments: fractured left hand, status post-surgery. (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). She can lift or carry up to 20 pounds occasionally, 10 pounds frequently; sit, stand, and walk up to a total of 6 hours each in an 8-hour day. She is limited to frequently performing manipulative activities and operating foot controls. She has no postural activity limitations, and no visual, communicative or environmental restrictions.
>
> 6. The claimant is capable of performing past relevant work as an office manager and housekeeping/cleaner job. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

>    7. The claimant has not been under a disability, as defined in the Social Security Act, from March 31, 2012, through the date of this decision (20 CFR 404.1520(f)).

[Tr. 11-18].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v.*

3

*Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. ANALYSIS

This case involves an application for DIB. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

On appeal, the Plaintiff argues that the ALJ committed two errors. First, the Plaintiff contends that the ALJ failed to properly consider the opinion of physical therapist Eric Jones. [Doc. 14 at 3-12]. Second, the Plaintiff alleges that the ALJ failed to consider the Plaintiff's non-severe mental impairments in determining the Plaintiff's RFC. [*Id.* at 13-15]. The Court will address each argument in turn.

### A. Opinion of Physical Therapist Eric Jones

The Plaintiff argues that the ALJ failed to acknowledge the type of evaluation Mr. Jones conducted in assessing the Plaintiff's functional limitations and did not provide "good reason" for rejecting Mr. Jones's opinion.

On March 6, 2014, Mr. Jones conducted a "Functional Capacity Evaluation" at the request of Plaintiff's counsel. [Tr. 38, 284-304]. The Plaintiff's primary impairment stems from a left wrist facture sustained in October 2011 as a result of a fall. [Tr. 28, 154, 249]. Between January and August 2012, the Plaintiff received treatment from orthopedic surgeon Robert E. Ivey, M.D., for left wrist pain. [Tr. 242-65]. Dr. Ivey eventually performed left wrist proximal row carpectomy surgery on July 31, 2012. [Tr. 243, 245]. At the Plaintiff's follow-up visit on August 9, 2012, she

5

reported tremendous relief of pain and that she was not taking pain medication. [Tr. 242]. Dr. Ivey noted excellent digit mobility and x-rays reported no further arthritic changes. [*Id.*]. The record does not contain any additional treatment pertaining to the Plaintiff's left wrist.

Because the Social Security Administration did not refer the Plaintiff for a consultative examination, Plaintiff's counsel arranged for Mr. Jones to perform a Functional Capacity Evaluation. The evaluation essentially consisted of two parts. The first part entailed a physical examination and assessed the Plaintiff's range of motion and muscle strength of the neck, back, shoulders, arms, wrists, hands, hips, knees, and ankles, sensory of the ankles, knees, and upper extremities, and gross balance. [Tr. 287-91]. The physical exam yielded largely normal findings except that the Plaintiff demonstrated decreased range of motion and muscle strength with her left forearm, wrist, and hand. [*Id.*].

The second part of the evaluation involved a variety of tests and exercises that assessed the Plaintiff's ability to perform different activities with her upper and lower extremities. [Tr. 294-304]. The Plaintiff performed many of the activities satisfactorily except activities that involved the use of her left wrist. Specifically, the Plaintiff demonstrated asymmetrical handling on exercises that required simultaneous use of the hands, and in some cases, the exercise had to be stopped due to "loss control of weight." [Tr. 296-302].[2]

Mr. Jones concluded that the Plaintiff's "objective measures and scores . . . place her in the Sedentary Physical Demand category (lifting up to 10 [pounds]) due to safety and limitations of

---

[2] The particular tests performed include: waist to floor exercise (hands on handles waist height and lower crate to floor and return); waist to crown exercise (hands on handles waist height, lift crate to upper shelf using handles); front carry exercise (hands on handles of crate at waist level, step back, turn, and carry weight 25 feet and return 25 feet to starting point); push and pull static force for three second hold; and perform constant hand activity (hands at crown level) for two minutes (with and without two pound cuffs on both wrists) without rest breaks. [Tr. 296-301].

6

left wrist." [Tr. 286, 291]. The Plaintiff's heart rate, dyspnea, and blood pressure supported the Plaintiff's "subjective reports of increased pain/discomfort with lifts/carries and activities involving left hand & wrist." [*Id.*]. Mr. Jones also noted that the Plaintiff had to take an "anti-anxiety pill" before she resumed testing because "she was very nervous about the test and was having an anxiety attack." [*Id.*].

Accompanying the evaluation was a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" ("medical source statement"), wherein Mr. Jones responded to a variety or short answer and multiple-choice questions, opining on the Plaintiff's ability to perform different work-related activities. [Tr. 278-83]. Mr. Jones opined the following limitations: the Plaintiff could never lift or carry more than 10 pounds occasionally; she could sit, stand, and walk for six hours each but could only sit and stand three hours and walk for two hours without interruption; with her right hand, she could occasionally reach overhead and frequently reach in all other directions, handle, finger, feel, and push or pull; with her left hand, she could never reach overhead but could occasionally reach in all other directions, handle, finger, feel, and push or pull; she could frequently operate foot controls; and she could frequently balance, stoop, kneel, crouch, and climb stairs and ramps but could never crawl or climb ladders and scaffolds. [Tr. 278-81]. Mr. Jones identified "[a]symmetrical handling of load due to limitations of left wrist" as the "medical or clinical finding" that supported the lifting and carrying restriction, and he attributed the Plaintiff's left hand restrictions to "limitations of left wrist" demonstrated during the testing. [Tr. 278, 280]. Mr. Jones noted "no significant limitations" as to all other activities evaluated on the medical source statement. [Tr. 279-81].

In the disability determination, the ALJ found that Mr. Jones was an "other source" whose opinion must be considered pursuant to Social Security Ruling 06-03p. [Tr. 16]. The ALJ

"emphasized" that the examination was "through attorney referral and in connection with an effort to generate evidence for the current appeal," rather than an attempt to seek treatment for symptoms. [*Id.*]. The ALJ noted that "[a]lthough such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored." [*Id.*]. The ALJ went on to assign the opinion little weight, finding that the limitations were not credible given the objective medical findings and treatment notes of record. [*Id.*]. First, the ALJ found the walking, standing, sitting, and right hand limitations were inconsistent with Mr. Jones's finding of "no significant limitations" within these areas upon testing. [*Id.*]. Second, the ALJ discounted Mr. Jones's overall opinion on the basis that Mr. Jones did not have the benefit of reviewing the medical evidence of record, he did not have a treating relationship with Plaintiff, he only examined the Plaintiff on one occasion and at the request of Plaintiff's counsel, and the sedentary limitations which were based on the "safety and limitations of left wrist" was inconsistent with Dr. Ivey's treatment notes as well as the opinions of the nonexamining state agency physicians. [Tr. 16-17]. Lastly, the ALJ observed that the Plaintiff had to take her anxiety medication before continuing her examination, "which could have somewhat altered results or at least efforts in testing." [*Id.*].

As a preliminary matter, the Court addresses the Plaintiff's contention that the ALJ was required to provide "good reason" for discounting Mr. Jones's opinion. [Doc. 14 at 4-5]. The "good reason" requirement enumerated in 20 C.F.R. § 404.1527(c)(2) only applies to "treating sources." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). A "treating source" is a "physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. As a one-time examiner, Ms. Jones was not a treating source. Neither is Mr. Jones an "acceptable medical source," but rather an "other source."

8

*See id.* § 404.1513(a), -(d) (explaining that an "acceptable medical source," in general, is a licensed physician or psychiatrist, whereas an "other source" includes all other medical sources). Accordingly, an "opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record." *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248-49 (6th Cir. 2015) (recognizing that a physical therapist was a "non-acceptable medical source" and therefore "the ALJ was not required to give her opinion any particular weight.") (citations omitted).

Instead, "other source" opinions are assessed pursuant to Social Security Ruling 06-03p as correctly observed by the ALJ. The ruling requires that an ALJ consider an "other source" opinion and should generally explain the weight given to the opinion. 2006 WL 2329939, *6 (Aug. 9, 2006). The factors listed in 20 C.F.R. 404.1527(c)(1)-(6), which are used for evaluating medical opinions from "acceptable medical sources," remain guiding principles for determining the weight that should be given to opinions from "other sources." *Id.* at *3. These factors include the frequency of examination, the consistency of the opinion with other evidence, the amount of relevant evidence supporting the opinion, the source's area of expertise, and any other relevant factor that supports or refutes the opinion. *Id.* at 4-5. However, not every factor need be weighed; the particular facts of each case will dictate which factors are appropriate for consideration in order to properly evaluate the opinion at hand. *Id.* at 5.

With this framework in mind, the Court considers the Plaintiff's more specific objections in turn. First, the Plaintiff suggests that the ALJ only focused on Mr. Jones's medical source statement and failed to acknowledge or address the "specialized examination" that Mr. Jones conducted. [Doc. 14 at 5]. The Plaintiff maintains that this error was compounded by the ALJ's remarks that the exam was done at the request of counsel and Mr. Jones "was presumptively paid

9

for the report." [*Id.* at 5-6]. Although "the kinds and extent of examinations and testing the source has performed" is a relevant factor to consider is assessing the weight an "other source" opinion deserves, 20 C.F.R. § 404.1527(c)(2)(ii), the ALJ was not required to comment on the nature of the evaluation. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) ("[A]n ALJ can consider every piece of evidence without addressing [all the evidence] in his opinion."); *Campbell v. Berryhill*, No. 3:15-CV-551-TAV-CCS, 2017 WL 1024338, at *5 (E.D. Tenn. Mar. 15, 2017) ("Section[] 404.1527(c)(1)–(6) . . . do[es] not mandate that the ALJ explicitly discuss every factor listed."); Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *6 (distinguishing what an ALJ must consider and what an ALJ must say with regard to "other source" opinions).

Moreover, while the Sixth Circuit Court of Appeals has recognized that "[t]here is nothing fundamentally wrong with a lawyer sending a client to a doctor," *Blankenship v. Bowen*, 874 F.2d 1116, 1122 n.8 (6th Cir. 1989) (citation omitted), the context in which the examination was arranged was an appropriate consideration as the ALJ did not reject the opinion on this basis. *See Cain v. Colvin*, No. CV 13-281-ART, 2014 WL 12573010, at *3 (E.D. Ky. Apr. 9, 2014) ("But as long as the ALJ does not reject an examiner's opinion solely because her exam was arranged by the claimant's attorney, the judge may consider that factor in assessing the examiner's credibility.); *Tyler v. Comm'r of Soc. Sec.*, No. 1:13-CV-277, 2014 WL 1052627, at *4 (W.D. Mich. Mar. 18, 2014) ("It was entirely appropriate for the ALJ to note that Dr. Montes had examined plaintiff on a referral from plaintiff's attorney and that the purpose of the examination was to generate evidence in support of plaintiff's claims for DIB and SSI benefits.").

Second, the Plaintiff argues that Mr. Jones's opinion was due more weight because he was the only medical source who examined the Plaintiff. [Doc. 14 at 7-8]. The ALJ instead adopted

10

the opinions of nonexamining state agency physicians who opined limitations consistent with light work, including no manipulative, reaching, or feeling limitations with the left upper extremities. [Tr. 16]. The Plaintiff further contends that many of the reasons cited by the ALJ in discounting Mr. Jones's opinions—that Mr. Jones was not a treating source and did not have the benefit of reviewing the entire record—does not constitute substantial evidence because the opinions rendered by the nonexamining state agency physicians suffer from the same flaws. [Doc. 14 at 8].

The Court observes that *generally*, more weight is given to a source who has examined a claimant than a source who has not. 20 C.F.R. § 404.1527(c)(2). However, the opinion's supportability and consistency with other record evidence, as well as the source's specialization and any other relevant factors must also be considered. 20 C.F.R. § 404.1527(c)(1)-(6). Moreover, "[i]n appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3 (July 2, 1996). In this case, the Court finds that substantial evidence supports the ALJ's decision to adopt the opinions of the state agency physicians over the opinion of Mr. Jones.

In reaching this conclusion, the Court observes that when an ALJ defers to the opinion of a nonexamining state agency physician who did not have the benefit of reviewing later submitted medical evidence—in this case, Mr. Jones's opinion—there must be "'some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting *Fisk v. Astrue*, 253 F. App'x. 580, 585 (6th Cir. 2007)). Here, it is evident that the ALJ carefully considered Mr. Jones's opinion before deferring to the state agency physicians who opined limitations within the light range. [Tr. 16-17, 42-52, 54-64]. Significantly,

the state agency physicians had the benefit of reviewing Dr. Ivey's medical records which are in stark contrast to the findings made by Mr. Jones. Mr. Jones, on the other hand, did not have the benefit of reviewing any record evidence.

To that extent, the Court observes that many of the limitations assessed by Mr. Jones—restrictions against prolonged walking, standing, and sitting, as well as limitations with the right upper extremity—are not supported by the record or Mr. Jones's examination findings. As pointed out by the ALJ, the Plaintiff demonstrated no significant limitations in her ability to sit, stand, or walk. [Tr. 16-17].[3] Likewise, the Plaintiff demonstrated no significant manipulative limitations of the right dominant hand, but was nonetheless limited to occasional overhead reaching. [*Id.*]. These contradictory findings support the ALJ's overriding conclusion that Mr. Jones's opinion was not credible. While the Plaintiff complains that it was improper to reject Mr. Jones's opinion because he was not a treating source when the state agency physicians were likewise nontreating sources, the ALJ did not reject Mr. Jones's opinion on this basis alone. Moreover, whether Mr. Jones was a treating source is factor that ALJ was required to consider. *See* 20 C.F.R. § 404.1527(c)(2).

---

[3] Because Mr. Jones's medical source statement assessed limitations against prolonged walking, standing, and sitting, and the use of the right upper extremity while at the same time noting that the Plaintiff demonstrated "no significant limitations" within these areas [Tr. 279-80], the Plaintiff argues that "[t]his would suggest that this is less of an inconsistency and more likely simply a conclusion that ALJ didn't understand" [Doc. 14 at 9]. The Plaintiff submits that "[t]he ALJ gave no consideration to the possibility that Mr. Jones' limitation to no overhead reaching with the left hand would naturally contribute to a lesser but not inconsequential compensatory limitation with respect to the right hand." [*Id.*]. The Plaintiff's speculative explanation is not supported by any evidence nor the medical source statement. The medical source statement asks the examiner to rate the individual impairment of the right hand separate from the left hand. [Tr. 280]. Moreover, the examiner is asked to explain his findings of the limitations assessed, and Mr. Jones did not indicate that the individual limitations imposed on the right hand are effected by the functioning of the left hand. [*Id.*]. Further, the Plaintiff's position says nothing about the inconsistent findings regarding the Plaintiff's ability to stand, walk, and sit.

12

As a final argument, the Plaintiff suggests that because no medical source had the opportunity to review Mr. Jones's opinion, the ALJ substituted his own lay opinion for that of Mr. Jones's opinion. The Court disagrees. "The 'playing doctor' prohibition comes into play when the ALJ 'either reject[s] a doctor's medical conclusion without other evidence [or] draw[s] medical conclusions [herself] about a claimant without relying on medical evidence.'" *Hill v. Astrue*, No. 5:12CV-00072-R, 2013 WL 3293657, at *3 (W.D. Ky. June 28, 2013) *aff'd sub nom. Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547 (6th Cir. 2014) (quoting *Armstrong v. Barnhart*, 287 F. Supp. 2d 881, 887 (N.D. Ill. 2003)). Here, the ALJ did neither. Rather, the ALJ properly relied on the medical records of the Plaintiff's treating orthopedist, Dr. Ivey, the opinions of the state agency physicians, and the Plaintiff's daily living activities. [Tr. 14-17]. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding.").

Accordingly, the Plaintiff's allegation of error in this regard is not well-taken.

### B.     Non-Severe Mental Impairments

The Plaintiff also alleges that the ALJ's RFC determination failed to consider the effects of the Plaintiff's non-severe mental impairments.

At Step Two of the sequential evaluation, the ALJ observed that the Plaintiff alleged depression as a severe impairment. [Tr. 12]. The ALJ noted that treating physician Howard Holmes, M.D., prescribed antidepressant and anxiety medication due to reported situational anxiety and depression. [Tr. 12, 207-240, 305-08]. Beyond these treatment records, the ALJ observed that the Plaintiff did not seek any additional mental health treatment, she did not require hospitalization or inpatient treatment for a mental disorder, and the Plaintiff's Function Report [Tr.

13

136-48] revealed that the Plaintiff was capable of independently performing a wide range of daily activities and only identified physical limitations due to her left hand. [Tr. 12].

The ALJ also identified opinions from consultative examiner William J. Kenney, Ph.D., and nonexamining state agency psychologists, all of whom opined that the Plaintiff had no more than "mild" mental functioning limitations. [Tr. 12-13, 42-52, 54-64, 267-69]. Specifically, Dr. Kenney found that the Plaintiff maintained a functional level of independence, adaptability, sustainability, and effectiveness that resulted in no more than "mild" limitations in an ability to understand, remember, maintain concentration and persistence, and adapt to changes, and no limitations in social interactions. [Tr. 12-13, 267-69]. Additionally, two nonexamining state agency psychologists opined that the evidence of record established no more than "mild" limitations in mental functioning. [Tr. 13, 42-52, 54-64]. The ALJ gave great weight to the foregoing opinions, finding that the Plaintiff's "medically determinable mental impairment of depression and anxiety do not cause more than minimal limitations in her ability to perform basic mental work activities and is therefore non-severe." [Tr. 13].

The Plaintiff argues that although the ALJ found the Plaintiff's mental impairments non-severe at Step Two, the ALJ failed to properly consider the effects of the Plaintiff's non-severe impairments in the RFC portion of the decision. [Doc. 14 at 13]. The Plaintiff argues that by definition, a "mild" impairment has some effect on a claimant's ability to perform work-related functions which is why the regulations require consideration of both severe and non-severe impairments in forming a claimant's RFC. [*Id.* at 14].

Although a claimant's impairment may be found non-severe at Step Two, "a Step Two analysis is distinct from the ALJ's obligation to consider the impact of Plaintiff's non-severe impairments in addition to and in conjunction with Plaintiff's severe impairments in assessing

14

Plaintiff's RFC." *Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015). Therefore, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" in assessing a claimant's RFC. Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5 (July 2, 1996); *see White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009) ("Once one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe."). Social Security Ruling 96-8p explains that "[w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim." *Id.*

The Court finds that the ALJ considered the Plaintiff's non-severe mental impairments in the RFC portion of the decision. The ALJ observed that the Plaintiff's reported activities that were inconsistent with a disabling mental condition. [Tr. 15]. In this regard, the ALJ found

> [t]he Plaintiff remained independent in personal care, dresses and bathes daily, performs household chores, prepares meals, mops, does laundry, drives an automobile, shops[,] initiates phone calls, handles finances, attends church 3 to 4 times a week, and goes to Grief Share since her mother's death. Enjoys photography, plays Texas Holdem Poker tournaments with her sister and friends weekly, plays up to 3 hours on the computer at times, goes out to eat several times a week, goes to movies, and still attends staff meetings at the family business.

[*Id.*]. Furthermore, the ALJ cited to Dr. Kenney's opinion in the RFC portion of the decision in assessing the Plaintiff's functional limitations. [Tr. 17]. The foregoing not only demonstrates that the ALJ considered the Plaintiff's non-severe impairments in fashioning an RFC, but also provides substantial evidence that the Plaintiff's "mild" limitations discussed at Step Two do not translate into functional limitations beyond those accounted for in the Plaintiff's RFC.

15

Therefore, the Court finds the Plaintiff's assignment of error in this regard is without merit.

## V. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Summary Judgment [**Doc. 13**] is **DENIED**, and the Defendant's Motion for Summary Judgment [**Doc. 15**] is **GRANTED**. The decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED**.

ENTER:

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

16